IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 17-0934

_____

FILED

**March 9, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. SOUTHLAND PROPERTIES, LLC,
Petitioner

v.

HONORABLE DAVID R. JANES, Judge of the Circuit Court of Marion County;
KENNETH G. JONES, JR.; and G. RUSSELL ROLLYSON, JR., Deputy Commissioner
of Delinquent and Nonentered Lands for Marion County, West Virginia,
Respondents

_____

Petition for Writ of Prohibition

WRIT DENIED

_____

Submitted: February 6, 2018
Filed: March 9, 2018

Jason E. Wingfield, Esq.
Gianola, Barnum, Bechtel and Jecklin, L.C.
Morgantown, West Virginia
Counsel for the Petitioner

David A. Glance, Esq.
David A. Glance, Attorney at Law
Fairmont, West Virginia
Counsel for the Respondent
Kenneth G. Jones, Jr.

Lisa A. Hopkins, Esq.
Vincent J. Smith, Esq.
West Virginia State Auditor's Office
Charleston, West Virginia
Counsel for the Respondent
G. Russell Rollyson, Jr., Deputy
Commissioner of Delinquent and
Nonentered Lands

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers[.]" Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3. "'Rule 19(a) of the West Virginia Rules of Civil Procedure requires two general inquiries for joinder of a person who is subject to service of process. First, is his presence necessary to give complete relief to those already parties? Second, does he have a claim that, if he is not joined, will be impaired or will his nonjoinder result in subjecting the existing parties to a substantial risk of multiple or inconsistent obligations? If the absent person meets the foregoing test, his joinder is required.' Syllabus, in part, *Wachter v. Dostert*, 172 W. Va. 93, 303 S.E.2d 731 (1983)." Syllabus Point 1, *State ex rel. One-Gateway v. Johnson*, 208 W. Va. 731, 542 S.E.2d 894 (2000).

4. "When a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void." Syllabus Point 2, *O'Daniels v. City of Charleston*, 200 W. Va. 711, 490 S.E.2d 800 (1997).

5. "Generally, all persons who are materially interested in the subject-matter involved in a suit, and who will be affected by the result of the proceedings, should be made parties thereto, and when the attention of the court is called to the absence of any of such interested persons, it should see that they are made parties before entering a decree affecting their interest." Syllabus, *Manufacturers' Light & Heat Co. v. Lemasters*, 91 W. Va. 1, 112 S.E. 201 (1922).

6.　　West Virginia Code § 11A-3-60 does not contemplate notice to or participation of a delinquent taxpayer in an action to compel issuance of a deed for property sold at a tax sale.

WALKER, Justice:

Kenneth G. Jones, Jr. purchased two tracts of land in Marion County at a tax sale in 2016. The properties were owned by Southland Properties, LLC (Southland), which had failed to pay property taxes for several years. Shortly after the tax sale, Southland filed bankruptcy, which precluded the Deputy Commissioner of Delinquent and Nonentered Lands of Marion County (Deputy Commissioner) from delivering the deeds to Southland's tax-delinquent properties to Mr. Jones. After the bankruptcy was dismissed several months later, the Deputy Commissioner declined to issue the deeds to Mr. Jones because the thirty-day time frame set by West Virginia Code § 11A-5-39 for issuance of the deeds following the tax sale had passed — through no fault of Mr. Jones. Mr. Jones instituted an action under West Virginia Code § 11A-3-60 (Section 60 Proceeding) to compel the Deputy Commissioner to issue the deeds. Southland moved to intervene in the Section 60 Proceeding on the grounds that it was an indispensable party, which was denied. Southland invokes this Court's original jurisdiction and seeks a writ of prohibition against the circuit court for denying its alleged right to intervene.

While we acknowledge that Southland owned the properties and retained the right to pay the delinquent taxes and redeem at any time prior to delivery of the deeds to Mr. Jones, we conclude that Southland was not an indispensable party to the Section 60 Proceedings because Southland made no attempt to redeem and its ownership interest as a delinquent taxpayer is predicated on redemption. In the absence of an attempt to redeem

1

the properties, the limited scope of the Section 60 Proceeding did not affect Southland's property interests, but rather only compelled the Deputy Commissioner to deliver deeds — the right to which Mr. Jones has long since accrued. Therefore, we deny the writ of prohibition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Southland owned two tracts of land in Marion County, West Virginia. Southland did not pay property taxes on those parcels for the tax years 2012, 2013, 2014, or 2015 and, as a result, owed Marion County over $90,000. On June 29, 2016, Mr. Jones purchased the two tracts of land at a delinquent properties tax sale conducted by G. Russell Rollyson, Jr., in his capacity as Deputy Commissioner of Delinquent and Nonentered Lands for Marion County. Mr. Jones paid $60,000 for the two properties. After the sale, Mr. Rollyson provided Mr. Jones with a list of the necessary steps to secure the deed, which included that Mr. Jones provide to Mr. Rollyson a list of all interested parties to be served with notice of opportunity to redeem and a requirement that Mr. Jones tender payment of $60,000 on or before August 29, 2016. Mr. Jones complied with all necessary steps. Mr. Rollyson duly served Southland with notices to redeem both properties by regular mail, certified mail, and publication. The notices provided that Southland could redeem its properties by paying the outstanding taxes at any time before October 17, 2016, for one property, and October 24, 2016 for the other.

2

Southland did not redeem either property. Rather, on October 17, 2016 —

the last day to redeem one of the properties — Southland filed Chapter 11 bankruptcy in

the United States Bankruptcy Court for the Northern District of West Virginia. Because

the two delinquent properties were part of Southland's bankruptcy estate, their sale to Mr.

Jones was subject to the automatic stay provisions of 11 U.S.C. § 362. Accordingly, Mr.

Rollyson issued refund checks to Mr. Jones. On December 29, 2016, Mr. Jones filed a

Motion for Relief from the Automatic Stay, but during the pendency of that motion, the

bankruptcy court dismissed Southland's bankruptcy petition.[1] The dismissal order, dated

March 3, 2017, lifted the automatic stay, and at that time Mr. Jones corresponded with Mr.

Rollyson in an attempt to secure deeds to the two delinquent properties. Mr. Rollyson

responded that he was unable to issue the deeds pursuant to West Virginia Code § 11A-3-

59, because he interpreted the statute as forbidding him to issue the deeds once thirty days

had passed from the date Mr. Jones's right to the deeds accrued.[2] Mr. Rollyson and Mr.

Jones both agreed that Mr. Jones's right to the deeds accrued on October 17, 2016, and

October 24, 2016, respectively, but due to the interruption of the bankruptcy proceedings,

---

[1] The record indicates that the United States Trustee moved the bankruptcy court for conversion or dismissal for, among other things, Southland's failure to comply with monthly reporting requirements, Southland's failure to provide any updated information relating to an alleged forthcoming sale of the properties, and the failure to list known delinquent taxes on the schedules it filed with the bankruptcy court.

[2] As discussed more fully below, West Virginia Code § 11A-3-59 provides that "[e]xcept when ordered to do so as provided in section 60 [§11A-3-60] of this article, the deputy commissioner shall not execute and deliver a deed more than thirty days after the purchaser's right to the deed accrued."

3

more than thirty days had passed since that time. Based on the plain language of the statute, Mr. Rollyson believed he did not have the authority to issue the deeds without a court order requiring him to do so.

Accordingly, Mr. Jones sought a court order to compel delivery of the deeds pursuant to West Virginia Code § 11A-3-60. Prior to filing the action in circuit court, Mr. Jones provided notice to Mr. Rollyson, but not to Southland. Mr. Rollyson moved to dismiss the action, and a hearing was held on July 11, 2017. Mr. Rollyson argued that West Virginia Code § 11A-3-59 did not authorize him to issue the deed after the thirty-day period, and that he declined to read into the statute a tolling of the thirty-day time limitation due to bankruptcy proceedings. Mr. Rollyson additionally argued that the most appropriate course of action was to have Mr. Jones re-bid on the properties. Mr. Jones argued that West Virginia Code §11A-3-59 does not provide a thirty-day "drop dead date" from which a tax-sale purchaser has no remedy or recourse. Instead, Mr. Jones reasoned that the Legislature had contemplated a six-month period to compel issuance of the deed under West Virginia Code § 11A-3-60 for instances in which outstanding circumstances, due to no fault of the tax-sale purchaser, had prevented delivery of the deed within the thirty-day time frame. The circuit court converted the motion to dismiss into a motion for summary

judgment and granted summary judgment in favor of Mr. Jones during the hearing.[3] However, the circuit court did not issue its final order compelling Mr. Rollyson to deliver the deeds until August 10, 2017.

After the summary judgment hearing but before the circuit court entered its final order granting summary judgment to Mr. Jones, Southland moved to intervene in the proceedings on July 27, 2017. The circuit court took up Southland's motion on September 11, 2017, after Mr. Rollyson had already delivered the deeds to Mr. Jones pursuant to the August 10, 2017 order. Southland argued that it should have been given notice of the action and permitted to intervene because Southland was an indispensable party as it owned the property until the deeds were delivered to Mr. Jones. Southland contended that West Virginia Code § 11A-3-56 grants a tax-delinquent property owner the right to redeem at any time before a tax deed is issued.[4] Thus, Southland argued, the failure to notify it of the hearing and to join it in the proceeding was a violation of its due process rights. Mr. Jones

---

[3] The circuit court's interpretation of West Virginia Code § 11A-3-59 in its final order granting summary judgment in favor of Mr. Jones is not before this Court for review. Our review is limited to Southland's writ of prohibition in which it challenges the circuit court's denial of its motion to intervene.

[4] W. Va. Code § 11A-3-56 provides, in relevant part,

"[a]fter the sale of any tax lien on any real estate pursuant to section forty-five [§ 11A-3-45] or forty-eight [§ 11A-3-48] of this article, the owner of or any other person who was entitled to pay the taxes on, any real estate for which a tax lien thereon was purchased by an individual, may redeem at any time before a tax deed is issued therefor. . . ."

5

argued that the issue was moot because the deeds had already been delivered in response to the circuit court's August 10, 2017 order and Southland no longer had an interest in the property. Mr. Jones drew the circuit court's attention to the fact that Southland had never paid its taxes to redeem the property and suggested that Southland's bankruptcy filing and motion to intervene were simply a means to extend the redemption period. Finally, Mr. Jones argued that West Virginia Code § 11A-3-60 requires notice be given only to the Deputy Commissioner, not the delinquent taxpayer. Therefore, the Legislature intended that a proceeding to compel issuance of the tax deeds brought under that section would involve only the Deputy Commissioner and the tax-sale purchaser. Mr. Rollyson took no position on the motion to intervene, but did stipulate that Mr. Jones had complied with all statutory requirements for issuance of the deeds.

The circuit court denied Southland's motion to intervene, agreeing that West Virginia Code § 11A-3-60 did not contemplate notice to or participation of the delinquent taxpayer (Southland) in an action to compel issuance of deeds for property sold at a tax sale. The circuit court further concluded that Southland had forfeited ownership of the two properties when it failed to redeem within the time frames specified by Mr. Rollyson. Finally, the circuit court explained that Southland had available remedies under West Virginia Code §§ 11A-4-1 to -7 which enabled it to bring a cause of action to set aside the sale or deed. Southland now seeks a writ of prohibition from this Court, contending that the circuit court exceeded its legitimate powers in denying its motion to intervene.

6

## II.  STANDARD OF REVIEW

In ascertaining the necessity of issuing a writ of prohibition, we are mindful that "[a]s an extraordinary remedy, this Court reserves the granting of such relief to 'really extraordinary causes.'"[5]  We have explained that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers[.]"[6]  In light of the posture of Southland's requested writ, our review is guided the following factors:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of

---

[5] *State ex rel. AEP v. Nibert*, 237 W. Va. 14, 19, 784 S.E.2d 713, 718 (2016) (citing *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996)) (internal quotations and citations omitted).

[6] Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

7

clear error as a matter of law, should be given substantial weight.[7]

Southland's argument in support of prohibition focuses almost exclusively on the third factor—that the circuit court's denial of its motion to intervene was clearly erroneous as a matter of law. With this standard in mind, we turn to the parties' arguments.

## III. ANALYSIS

Southland argues that the Rules of Civil Procedure and this Court's precedent regarding the liberal inclusion of parties where real property interests are concerned require its participation in Mr. Jones's Section 60 Proceeding. Rule 19 of the West Virginia Rules of Civil Procedure addresses joinder of appropriate parties:

> Persons to be joined if feasible. – A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Applying this rule, we have held that joinder is required by Rule 19 under certain circumstances:

> "Rule 19(a) of the West Virginia Rules of Civil Procedure requires two general inquiries for joinder of a person

---

[7] Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (footnote added).

who is subject to service of process. First, is his presence necessary to give complete relief to those already parties? Second, does he have a claim that, if he is not joined, will be impaired or will his nonjoinder result in subjecting the existing parties to a substantial risk of multiple or inconsistent obligations? If the absent person meets the foregoing test, his joinder is required." Syllabus, in part, *Wachter v. Dostert*, 172 W. Va. 93, 303 S.E.2d 731 (1983).[8]

In favor of prohibition, Southland relies on the liberal application of joinder as requiring its inclusion in the Section 60 Proceeding:

Generally, all persons who are materially interested in the subject-matter involved in a suit, and who will be affected by the result of the proceedings, should be made parties thereto, and when the attention of the court is called to the absence of any of such interested persons, it should see that they are made parties before entering a decree affecting their interest.[9]

Southland also points to Rule 24 of the West Virginia Rules of Civil Procedure addressing intervention of right, which provides

Intervention of right. – Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this State confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

[8] Syl. Pt. 1, *State ex rel. One-Gateway v. Johnson*, 208 W. Va. 731, 542 S.E.2d 894 (2000) (footnote added).

[9] Syllabus, *Manufacturers' Light & Heat Co. v. Lemasters*, 91 W. Va. 1, 112 S.E. 201 (1922) (footnote added).

Relating to the disposition of real property, we have held that

> [w]hen a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void.[10]

Thus, implicit in our inquiry into whether Southland is an indispensable party to this action is consideration of both the nature of the court proceeding and the nature of Southland's interest in the real property at issue.

The underlying court proceeding was an action to compel delivery of deeds purchased at a tax sale, as authorized by West Virginia Code §11A-3-60. West Virginia Code § 11A-3-59 provides that a tax-sale purchaser's right to the deed accrues at such time that the real estate described in the notice is not redeemed within the time frame specified in the notice.[11] Here, Southland filed bankruptcy, which, due to the automatic stay, prevented Mr. Rollyson from issuing the deeds within the requisite thirty days.[12] Because

---

[10] Syl. Pt. 2, *O'Daniels v. City of Charleston*, 200 W. Va. 711, 490 S.E.2d 800 (1997) (footnote added).

[11] In relevant part, West Virginia Code § 11A-3-59 provides "[i]f the real estate described in the notice is not redeemed within the time specified therein . . . the deputy commissioner shall, upon the request of the purchaser, make and deliver to the person entitled thereto a quitclaim deed for such real estate . . . ."

[12] W. Va. Code § 11A-3-59.

Mr. Rollyson declined to read into the statute a tolling of that thirty-day limitation for the bankruptcy proceedings, Mr. Jones was left with no option but to file an action to compel delivery of the deeds. In this context,[13] a Section 60 Proceeding resolves only whether the tax-sale purchaser is entitled to delivery of the deeds by examining the Deputy Commissioner's failure or refusal to deliver them.

By virtue of that limited inquiry, we agree that West Virginia Code § 11A-3-60 does not contemplate notice to or participation of a delinquent taxpayer in an action to compel issuance of a deed for property sold at a tax sale. The Legislature omitted the delinquent taxpayer from Section 60 Proceedings in spite of the fact that until the time the deed is executed, that delinquent taxpayer remains the owner of the property and retains the right to redeem. It is plain in light of that omission that the Legislature did not contemplate that a delinquent taxpayer would be party to a Section 60 Proceeding and that the delinquent taxpayer's presence is not necessary to give complete relief to the parties. For those reasons, we conclude that Southland fails the first test for required joinder.

Likewise, from a practical standpoint, the limited scope of the issues addressed in the Section 60 Proceeding did not require Southland's participation nor did the proceeding affect Southland's interest in the property because Mr. Jones's right to the

---

[13] West Virginia Code § 11A-3-60 also affords a mechanism to compel the Deputy Commissioner to prepare and serve notices to redeem if the Deputy Commissioner has failed or refused to do so.

deeds had already accrued at the expiration of the redemption period. We have discussed that "[t]itle to delinquent property that has been certified to the Auditor remains with the owner until the tax lien is purchased from the Auditor's deputy commissioner of delinquent and nonentered lands and the tax lien purchaser has completed all the steps necessary to secure a deed to the property."[14] And, here, Mr. Rollyson has certified that Mr. Jones has satisfied all the steps necessary to secure deeds to the properties. Elapse of the statute's time limits—for which Mr. Jones bears no fault—alone barred immediate execution and delivery of the deeds. It was undisputed that Mr. Jones's right to the deeds had already accrued. Thus, the Section 60 Proceeding, in this case, was limited to argument on the applicability of the time limitation as opposed to Mr. Jones's substantive right to the properties.

Here, Mr. Rollyson refused to deliver the deeds without a court order because he did not believe he was permitted to issue the deeds outside of the thirty-day time frame. While Mr. Rollyson argued below that it was more appropriate to restart the bidding process, the circuit court determined that even if the thirty days was not tolled by the bankruptcy proceedings, West Virginia Code § 11A-3-60 provides that an action to compel the deeds may be brought within six months of the date in which the right to the deeds accrued and that that time frame had not yet expired as of the date of Mr. Jones's action to compel the deeds. Thus, to the extent that Southland contends it would have

---

[14] *Ancient Energy, Ltd. v. Ferguson*, 239 W. Va. 723, 806 S.E.2d 154 (2017).

12

argued that the bidding process should restart, which would have given Southland additional time to redeem, that argument was advanced by Mr. Rollyson and rejected by the circuit court. Moreover, Southland's additional contentions that it could have challenged sufficiency of the notice or made other arguments to set aside the deed or the tax sale are outside the scope of a Section 60 Proceeding. If Southland sought to challenge notice or otherwise move to set aside the deed or the sale, the Legislature has provided a separate statutory mechanism for such a challenge in West Virginia Code §§ 11A-4-3 and -4.[15]

---

[15] West Virginia Code § 11A-4-3 (2017) provides, in relevant part,

> Whenever the deputy commissioner has delivered a deed to the purchaser after the time specified in section fifty-nine [§ 11A-3-59] of article three of this chapter, or within that time, has delivered a deed to a purchaser who was not entitled thereto either because of his failure to meet the requirements of section fifty-two [§11A-3-52] of said article three, or because the property conveyed had been redeemed, the owner of such property, his heirs and assigns, or the person who redeemed the property, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed.

Further, West Virginia Code § 11A-4-4 provides, in relevant part,

> If any person entitled to be notified under the provisions of section twenty-two [§ 11A-3-22] or fifty-five [§ 11A-3-55], article three of this chapter is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed.

13

Nevertheless, Southland argues that due process considerations render it an indispensable party to the Section 60 Proceeding because West Virginia Code § 11A-3-56 grants the delinquent taxpayer the right to redeem at any time before the tax deed is issued:

> After the sale of any tax lien on any real estate pursuant to section forty-five [§ 11A-3-45] or forty-eight [§ 11A-3-48] of this article, the owner of, or any other person who was entitled to pay the taxes on, any real estate for which a tax lien thereon was purchased by an individual, may redeem at any time before a tax deed is issued therefor. . . .

Southland cites this Court's prior decisions in *Bonafede v. Grafton Feed & Storage Co.*,[16] *United Fuel Gas Co. v. Morley Oil & Gas Co.*,[17] and *O'Daniels v. City of Charleston*,[18] as supporting its position that parties with an interest in real property are indispensable parties to an action when that action directly affects its real property interests.[19]

In *Bonafede*, we examined a boundary dispute in which the holder of a vendor's lien on real property at issue was dismissed as a party.[20] In reversing the circuit court, we held that "[i]n a suit to cancel a cloud upon the title to real estate, all parties who

---

[16] 81 W. Va. 313, 94 S.E. 471 (1917).

[17] 101 W. Va. 73, 131 S.E. 713 (1926).

[18] 200 W. Va. 711, 490 S.E.2d 800 (1997).

[19] *See supra* note 10.

[20] *Bonafede*, 81 W. Va. at 314, 94 S.E. at 472.

14

have or claim any interest, right, or title under the instrument, or instruments, of writing sought to be cancelled, should be made parties defendant."[21]  Likewise, in *United Fuel Gas Co.*, we reversed a circuit court's order for failure to join the Board of Education as the successor in title in an action relating to a restrictive covenant on extraction of oil and gas from land conveyed on the condition that it be "'exclusively appropriated and used as a site for a schoolhouse and school for and in said township.'"[22]  Finally, in *O'Daniels*, we examined the propriety of a mandamus order requiring the City of Charleston to remove fences constructed on the real property of persons not made party to the suit.[23]  We reversed that order and remanded for inclusion of those property owners, reasoning that they were indispensable parties and should have been added in order to defend their real property interests.[24]  In using these cases as support, however, Southland blissfully ignores that the nature of its interest in the properties at issue drastically differs from the property interests analyzed in those three cases.  Southland, of course, owned the delinquent properties until

---

[21] *Id.* at syl. pt. 1.

[22] *United Fuel Gas Co.*, 101 W. Va. at 75, 131 S.E. at 714.

[23] *O'Daniels*, 200 W. Va. at 715, 490 S.E.2d at 804.

[24] *Id.*

15

such time as the deeds were delivered to Mr. Jones,[25] but the nature of that ownership was inextricably tied to, and was solely predicated upon, redemption of the properties.

Indeed, in actions to set aside a deed or a sale, redemption is a prerequisite to the delinquent taxpayer's reinstated property interest.[26]  In light of the limited scope of a Section 60 Proceeding, the statutory language contemplating only the tax-sale purchaser and the Deputy Commissioner as parties, and the availability of alternate remedies to set aside the deed or the sale, we are disposed to that same conclusion.  Exercise of the right to redeem under West Virginia Code § 11A-3-56 is a condition precedent to asserting the right to intervene in a proceeding under West Virginia Code § 11A-3-60 to compel issuance of tax deeds to the tax-sale purchaser, for in the absence of an attempt to redeem the

---

[25] *See Mingo Cnty. Redevelopment Auth. v. Green*, 207 W. Va. 486, 494 n.24, 534 S.E.2d 40, 48 n.24 (2000), in which we stated:

> Prior to the changes made by the Legislature in 1994 the State actually "purchased" the property if not sold at the tax sale, and the title to the land passed to the State, essentially stripping the former owner of his or her interest at that point in the process.  Because of due process problems inherent in such a scheme, now a sheriff is said to "certify" the property to the Auditor, but title still rests with the (soon-to-be former) owner until the deputy land commissioner conveys a deed at the end of the tax-sale process. W. Va. Code § 11A-3-8 (1994).

[26] West Virginia Code § 11A-4-3 provides that "[n]o deed shall be set aside under the provisions of this section, except in the case of redemption . . . ."  West Virginia Code § 11A-4-4 likewise provides that "[n]o deed shall be set aside under the provisions of this section until payment has been made or tendered to the purchaser, or his heirs or assigns, of the amount which would have been required for redemption . . . ."

16

property at issue, there is no property interest held by a delinquent taxpayer that could be affected in the limited scope of a proceeding under that section. Of course, if the property is redeemed, the Section 60 Proceeding may be moot, and, therefore, intervention unnecessary, but we do not assume the ability to predict all of the various circumstances that might render intervention by a now-redeemed taxpayer in a Section 60 Proceeding necessary. What is clear in this case, however, is that because Southland made no attempt whatsoever to redeem the properties, it does not, so to speak, have a dog in the fight of a Section 60 Proceeding. Contrary to Southland's assertions that it could have challenged notice or other defects in the sale had it been granted intervenor status, a Section 60 Proceeding is not the battleground for a challenge to the propriety of the notice or the sale—those challenges are preserved in other code sections and may be asserted in a separate cause of action. Thus, in the absence of redemption, Southland's nonjoinder in the Section 60 Proceeding does not impair its own claims, nor does it subject the Deputy Commissioner and Mr. Jones to multiple or inconsistent obligations, and for that reason, Southland also fails the second test for required joinder.

As we discussed in *Mingo County Redevelopment Authority v. Green*, confidence in one's title to land and the state's interest in collecting taxes to function properly cannot be understated:

> We agree . . . that confidence in one's title to land is of paramount importance. As we have remarked previously, "certainty above all else is the preeminent compelling public policy to be served." *Hock v. City of Morgantown*, 162 W. Va.

17

853, 856, 253 S.E.2d 386, 388 (1979).  We are also mindful that the government must make a timely collection of property taxes in order to function properly.  As pointed out by the Legislature:

> In view of the paramount necessity of providing regular tax income for the state, county and municipal governments particularly for school purposes; and in view of the further fact that delinquent land not only constitutes a public liability, but also represents a failure on the part of delinquent private owners to bear a fair share of the costs of government, . . .

W. Va. Code § 11A-3-1 (1994).[27]

But, as we also recognized in *Redevelopment Authority*, due process must be observed, particularly since this area of law has undergone significant change, and "with each change increasing the protections afforded the delinquent land owner."[28]  The Legislature's statutory scheme, without doubt, is aimed at protecting the due process rights of a delinquent land owner by requiring notice, ample redemption periods, and delineating express causes of action in the event the deed was improperly obtained or the sale improperly conducted.

---

[27] *Redevelopment Authority*, 207 W. Va. at 491, 534 S.E.2d at 45 (footnote added). Although in *Redevelopment Authority* we discussed the language in the 1994 version of West Virginia Code § 11A-3-1, the statute has not changed since that time.

[28] *Id.*

18

The Legislature's enumerated purpose for the remedies of redemption and corresponding rights and avenues to challenge the sale of tax-delinquent property is to "provide *reasonable opportunities* for delinquent taxpayers to protect their interests in their lands and to *provide reasonable remedies* in certain circumstances for persons with interests in delinquent and escheated lands."[29]  Southland had more than reasonable opportunity to avail itself of the statutory remedy of redemption.  The period was prolonged by its bankruptcy filing, providing Southland more opportunity than most to redeem its properties prior to delivery of the deeds.  And yet, even as of the date it sought intervention in the Section 60 Proceeding, and up until the date that the Deputy Commissioner executed and delivered the deeds to Mr. Jones, Southland declined to simply pay its delinquent taxes to redeem the property, instead endeavoring to endlessly prolong the redemption period.  In light of the protections and remedies afforded to Southland by the Legislature and Southland's declination to avail itself of those protections and remedies, we readily conclude that Southland has not been deprived of due process of law by virtue of nonjoinder in the Section 60 Proceeding.

Because Southland did not attempt to redeem at any time prior to or during the pendency of the Section 60 Proceeding, we do not find that Southland's interests in the properties were affected by a proceeding that determined only whether the bidding process should be restarted or whether immediate delivery of the deeds was appropriate.

---

[29] W. Va. Code § 11A-4-1 (2017) (emphasis added).

19

Accordingly, we find that Southland was not an indispensable party to the proceeding and the circuit court's denial of Southland's motion to intervene was not clearly erroneous as a matter of law so as to merit issuance of a writ of prohibition. As discussed above, Southland had the statutorily-created remedy of redemption of which it declined to avail itself prior to delivery of the deeds. Looking forward, Southland also retains alternate remedies under West Virginia Code §§ 11A-4-1 to -7 to set aside the deeds or the sale within three years of delivery of the deeds. For those reasons, we deny the writ of prohibition.

## IV. CONCLUSION

Accordingly, we conclude that prohibition does not lie against the circuit court for its failure to join Southland as an indispensable party. We therefore deny Southland's requested writ.

Writ denied.